IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| JADE EMORY, | ) | CIVIL NO. 05-00671 SOM/LEK |
| | ) | |
| Plaintiff, | ) | |
| | ) | ORDER GRANTING DEFENDANTS' |
| vs. | ) | MOTION TO DISMISS |
| | ) | |
| UNITED STATES DEPARTMENT OF | ) | |
| HOUSING AND URBAN | ) | |
| DEVELOPMENT, et al., | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

ORDER GRANTING DEFENDANTS' MOTION TO DISMISS

I.     INTRODUCTION.

     On September 29, 2006, Plaintiff Jade Emory ("Emory") filed the second amended complaint ("SAC") against Defendants United States Department of Housing and Urban Development ("HUD"), Alphonso Jackson, Charles Hauptman, Anne Quesada, Michael Flores, and Jelani Madaraka (collectively, "Defendants").[1]  The Complaint alleges that Defendants:  (1) committed various torts, including fraud, misrepresentation, gross negligence, gross mismanagement, and misuse of the United States Postal Service; (2) refused to "require state compliance" with the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 et seq., and section 504 of the Rehabilitation Act, 29

---

     [1] Emory alleges that:  Jackson is the Secretary of HUD; Hauptman is the Director of the San Francisco Regional HUD office; Quesada is employed at the San Francisco HUD office, and Flores and Madaraka are employed at the Honolulu HUD office. Each Defendant is sued in his or her official and individual capacities.

U.S.C. § 794; (3) obstructed justice; and (4) failed to comply with the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552. Emory also asserts that the individual Defendants violated the First, Fifth, Ninth, and Fourteenth Amendments of the United States Constitution under <u>Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics</u>, 403 U.S. 388 (1971).  Emory prays for injunctive relief and monetary damages.

On October 20, 2006, Defendants filed a motion to dismiss the SAC.  Defendants construe the SAC as asserting "three types of claims:  common-law tort claims, <u>Bivens</u> claims alleging constitutional torts, and [FOIA] claims."  Motion at 2. Defendants ask this court to "dismiss the common-law tort claims against the federal employees in their official capacities" because they say Emory "failed to file an administrative tort claim."  Motion at 2.  Defendants do not move on Emory's <u>Bivens</u> claims, but contend that the individual Defendants have not been properly served.  Defendants "do not move to dismiss" Emory's FOIA claim.  Because the court agrees that Emory did not exhaust her administrative remedies regarding the tort claims against HUD and the official Defendants, the court dismisses them.  It is not clear that Defendants have correctly delineated Emory's claims, but, in any event, all claims remain pending other than tort claims against HUD and the official Defendants.

II.        LEGAL STANDARD.

A motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1) may either attack the allegations of the complaint as insufficient to confer subject matter jurisdiction on the court, or attack the existence of subject matter jurisdiction in fact. Thornhill Publ'g Co. v. Gen. Tel. & Elecs. Corp., 594 F.2d 730, 733 (9th Cir. 1979). When the motion to dismiss attacks the allegations of the complaint as insufficient to confer subject matter jurisdiction, all allegations of material fact are taken as true and construed in the light most favorable to the nonmoving party. Fed'n of African Am. Contractors v. City of Oakland, 96 F.3d 1204, 1207 (9th Cir. 1996). When the motion to dismiss is a factual attack on subject matter jurisdiction, however, no presumptive truthfulness attaches to the plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the existence of subject matter jurisdiction in fact. Thornhill Publ'g Co., 594 F.2d at 733. Conclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss. In re Syntex Corp. Sec. Lit., 95 F.3d 922, 926 (9th Cir. 1996). A plaintiff has the burden of proving that jurisdiction exists. Thornhill Publ'g Co., 594 F.2d at 733.

III.     BACKGROUND.

Emory says she became qualified for rental assistance under the "Section 8" rental subsidy program prior to 1995, but "could not find medically appropriate rural housing to accommodate her breathing handicap." SAC at 2 (Background).[2] She explains that, in 1995, she found a medically appropriate "rural cottage," but that the inspector for the Hawaii Housing Authority ("the HHA") "deliberately mis-measured the half-walls dividing the living room from the bedroom, trying to bully the landlord into lowering the rent." SAC at 2 (Background).  As a result of the investigator's actions, Emory says she "filed formal charges against HHA with the Defendants at HUD." SAC at 2 (Background).

After Emory found another medically appropriate cottage nearby, the landlord sold it, which "left her to be homeless for 3½ weeks." SAC at 3 (Background). Emory alleges that, in January 2000, she moved into a cottage in Waimanalo, but was eventually evicted "to join the ranks of 15,000 homeless people on this island [on] April 28, 2002." SAC at 3 (Background).

---

[2] Because only some paragraphs in the SAC are numbered, the court refers to unnumbered paragraphs in the SAC according to their page number and section (i.e., Background, Legal Standard, and Prayer for Relief). Similarly, Emory has not numbered the documents attached to the SAC. The court therefore refers to those documents as Exhibits in the order they are attached to the SAC.

4

Emory says she "remains homeless to this day."  SAC at 3 (Background).

Emory alleges that, in September 2002, the Housing and Community Development Corporation of Hawaii ("the HCDCH") "silently discontinued her eligibility" for the Section 8 program.  SAC at 4 (Background).  She says that the HCDCH "never" informed her that she was no longer eligible for the program.  SAC at 4 (Background).  Emory says she "file[d] formal charges against HCDCH in September 2003, exactly 1 year after HCDCH discontinued her rental voucher."[3]  SAC at 4 (Background).  The complaint against the HCDCH was premised on its alleged violations of the Fair Housing Act, 45 U.S.C. § 3601-3631, section 504 of the Rehabilitation Act, and the ADA.  Ex. 2 at 1-2.

In response to Emory's complaint against the HCDCH, HUD sent Emory a letter dated October 18, 2004, explaining that "[HUD] has determined that reasonable cause does not exist to believe that a discriminatory housing practice has occurred."  Ex. 3 at 1.  Although the letter was addressed to Emory, it was mailed to Mark Glen, who Emory says "was never authorized to receive my mail."  Ex. 3 at 1 (emphasis in original).

It appears that Emory eventually received HUD's determination of no reasonable cause, as she subsequently sent a letter to HUD, requesting that it provide her with a copy of the

---

[3] The complaint against the HCDCH was "officially filed" on October 9, 2003.  Ex. 1 at 1.

final investigative report and that the determination be reversed. Ex. 4 at 1. Emory's request was sent to HUD's former office, however, and had to be forwarded to its new office. Ex. 4 at 1. HUD acknowledged that its "receipt of [Emory's] request for review was delayed because of our change of address," but nonetheless reviewed Emory's claims under the Fair Housing Act and forwarded her request for review of her other claims to the appropriate offices. Ex. 4 at 2. HUD upheld its original determination of no reasonable cause for believing that HCDCH had committed a discriminatory housing practice. Ex. 4 at 1.

On January 19, 2006, pursuant to FOIA, Emory requested from HUD "a copy of the case file for [her] housing discrimination complaint" against the HCDCH. Ex. 12 at 1. HUD responded via letter dated March 9, 2006, explaining that it withheld some documents, but released other documents to her. Ex. 12 at 1. HUD also explained that it forwarded a portion of her FOIA request to HUD's Honolulu office, as "any records HUD might have regarding [certain] issues would be in that office." Ex. 12 at 2. According to Defendants, Emory "sought records from HUD in Honolulu on June 5, 2006." Motion at 5. They say that Emory timely appealed HUD's decision, and that HUD affirmed its decision on August 7, 2006.[4] Motion at 5.

---

[4] Defendants do not dispute that "the court has jurisdiction over [Emory's] FOIA claim." Motion at 5.

6

IV.     ANALYSIS.

    A.     Emory's Tort Claims.

Defendants move to dismiss only Emory's "common-law tort claims" against HUD and the official Defendants, arguing that she "never filed the administrative tort claim required by the Federal Tort Claims Act (FTCA)." Motion at 2. Defendants acknowledge that Emory did file a complaint against the HCDCH with HUD, but they contend that the complaint "does not allege any wrongdoing by HUD or any of its employees." Motion at 4. Because the SAC does not properly allege that Emory exhausted her administrative remedies with respect to claims against (not to) HUD or HUD employees, and because Emory did not respond to the exhaustion argument with evidence of timely exhaustion, the court dismisses Emory's tort claims against HUD and the official Defendants.

As this court stated in its order of August 31, 2006, "Tort claims against the United States are exclusively cognizable under the Federal Tort Claims Act, 28 U.S.C. §§ 1346(b), 2679(a)." DSI Corp. v. Sec'y of Housing & Urban Dev., 594 F.2d 177, 180 (9th Cir. 1979). Under 28 U.S.C. § 2675(a),

> An action shall not be instituted upon a claim against the United States for money damages for injury or loss of property or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, unless the claimant shall have first presented the claim to the appropriate Federal agency and his claim shall have been

7

>finally denied by the agency in writing and sent by certified or registered mail.

See also Warren v. U.S. Dep't of Interior Bureau of Land Mgmt., 724 F.2d 776, 780 (9th Cir. 1984) ("we hold that section 2675(a) requires the claimant or his legal representative to file (1) a written statement sufficiently describing the injury to enable the agency to being its own investigation, and (2) a sum certain damages claim"). "[I]f the claimant is dissatisfied with the agency action, he may file suit in an appropriate U.S. District Court not later than 6 months after the date of mailing of the notification." 28 C.F.R. § 14.9(a); Warren, 724 F.2d at 778 ("The plaintiff is permitted to sue the United States only after the claim is denied or six months have elapsed without final disposition by the agency.").

In the Ninth Circuit, "The timely filing of an administrative claim is a jurisdictional prerequisite to the bringing of a suit under the FTCA and, as such, should be affirmatively alleged in the complaint." Gillespie v. Civiletti, 629 F.2d 637, 640 (9th Cir. 1980) (citing Caton v. United States, 495 F.2d 635 (9th Cir. 1974)). "A district court may dismiss a complaint for failure to allege this jurisdictional prerequisite." Id.; see also DSI Corp., 594 F.2d at 180 ("even if appellants had alleged jurisdiction under the [FTCA], their action would be barred by their failure to file an administrative claim"). "However, the pleader should be given an opportunity to

file an amended complaint to attempt to cure such pleading defects." Gillespie, 629 F.2d at 640.

In this court's August 31, 2006, order, the court granted Emory leave to file a second amended complaint to properly allege whether she had exhausted her administrative remedies regarding her tort claims against HUD and HUD employees. In the SAC, Emory explains that she "filed formal charges against HHA with the Defendants at HUD," but the record lacks any evidence of the allegations made in that complaint or whether HUD issued a final decision. SAC at 2 (Background). Emory also says she filed a complaint against the HCDCH with HUD. Ex. 2 at 1-2.

Notwithstanding Emory's complaints against the HHA and the HCDCH, Emory fails to allege that she ever presented the tort claims asserted in this case against Defendants to a federal agency before commencing the present lawsuit. Cf. Warren, 724 F.2d at 780 (noting that claimants are required to present "a written statement sufficiently describing the injury to enable the agency to begin its own investigation"). Because the record lacks any allegation or evidence that Emory previously presented these claims to any federal agency, Emory fails to meet her burden of demonstrating that this court has subject matter jurisdiction over the tort claims against HUD and the official Defendants. See Gillespie, 629 F.2d at 640. The court therefore dismisses those claims.

9

B.   Emory's Bivens Claims.

Defendants argue that the "Bivens claims are not before the court because [Emory] has not served the individual Defendants." Motion at 4. They argue, "Because a Bivens action can only be maintained against a defendant in his or her individual capacity, personal service is required. Service at the defendant's place of employment is not sufficient." Motion at 4 (citing Daly-Murphy v. Winston, 837 F.2d 348, 355 (9th Cir. 1987)). Defendants state that, because the "record does not reflect that any of [the individual Defendants] has been served with the [SAC], . . . "these claims are not yet before the court but are not ripe for dismissal, either." Motion at 5. Emory says she "is currently researching how to serve the Defendants." Opp. at 2. As Defendants do not move on Emory's Bivens claims, the court makes no ruling on them, but discusses Emory's options for serving Defendants.

"A Bivens action can be maintained against a defendant only in his or her individual capacity only." Johnston v. Horne, 875 F.2d 1415, 1424 (9th Cir. 1989), overruled on other grounds by Irwin v. Veteran's Admin., 493 U.S. 1069 (1990); see also Daly-Murphy, 837 F.2d at 35 ("a Bivens action can be maintained against a defendant in his or her individual capacity only"). In such actions, "where the plaintiff seeks money damages from a federal official in his individual capacity, he must effect

10

personal service under Fed. R. Civ. P. 4[(e)[5]]."  Johnston, 875 F.2d at 1424; see also Friday v. U.S. Dep't of Justice, Civ. No. 93-283-FR, 1994 WL 48956, at *2 (D. Or. 1994) (concluding that plaintiffs must personally serve individual defendants in Bivens actions pursuant to former Fed. R. Civ. P. 4(d)(1)).

Under Rule 4(m), a plaintiff must serve the summons and complaint upon a defendant within 120 days after filing the complaint.  Fed. R. Civ. P. 4(m).  Rule 4(e) provides that service upon individual defendants may be properly effected

> by delivering a copy of the summons and of the complaint to the individual personally or by leaving copies thereof at the individual's dwelling house or usual place of abode with some person of suitable age and discretion then residing therein or by delivering a copy of the summons and of the complaint to an agent authorized by appointment or by law to receive service of process.

Fed. R. Civ. P. 4(e)(2).

Defendants rely on Daly-Murphy, 837 F.2d at 355, for the proposition that serving the individual Defendants at their place of employment is insufficient service.  Motion at 4.  In Daly-Murphy, 837 F.2d at 350, 355, the plaintiff was an

---

[5] In 1993, Fed. R. Civ. P. 4 was amended by replacing former subsection 4(d)(1) with subdivision 4(e).  See Churchill v. Barach, 863 F. Supp. 1266, 1271 n.3 (D. Nev. 1994) ("Rule 4(e)(2) adopts the language of former Rule 4(d)(1).  Therefore, cases construing the former Rule are helpful in this Court's analysis of new Rule 4(e)(2)."); see also C. Wright & A. Miller, Federal Practice and Procedure § 1096 (2006) ("When Rule 4 was amended in 1993, subdivision (e) of amended Rule 4 replaced former subdivision[] . . . (d)(1) and now governs service of process on an individual.").

11

anesthesiologist at the Veterans Administration Medical Center ("Medical Center"), and claimed that other Medical Center employees violated her constitutional rights. The plaintiff brought suit against the defendants in their individual and official capacities and served the defendants with her complaint and summons "by leaving them with Dan Flynn, Labor Relations, Authorized Agent at the Medical Center." Id. at 350, 355. The defendants moved for summary judgment, which the court granted, and the plaintiff appealed. Id. at 350.

On appeal, the Ninth Circuit was faced with deciding "whether the defendants were properly served in their individual capacities." Id. The court noted:

> Rule 4 has generally been construed to mean that service at a defendant's place of employment is insufficient. Smith v. Western Offshore, Inc., 590 F. Supp. 670, 674 (E.D. La. 1984); Guyette v. Stauffer Chem. Co., 518 F. Supp. 521, 527 (D.N.J. 1981); C. Wright & A. Miller, Federal Practice and Procedure § 1096 (1969). More specifically, where money damages are sought through a Bivens claim, personal service, and not service at the place of employment, is necessary to obtain jurisdiction over a defendant in his capacity as an individual. Micklus v. Carlson, 632 F.2d 227, 240-41 (3d Cir. 1980).

Id. at 355. The court ultimately concluded that, because the plaintiff served the defendants by leaving copies of the complaint and summons with an agent of the Medical Center, such service "did not suffice to establish jurisdiction over them as individuals." Id.

12

Defendants' counsel conceded at the hearing on the motion to dismiss that the individual Defendants may be personally served at the HUD office. They may not be served by leaving copies for them with an agent of HUD at their place of employment, but <u>personal</u> service is allowed, regardless of where it occurs. Fed. R. Civ. P. 4(e)(2) (providing that service may be effected by serving "the individual personally or by leaving copies thereof"). In other words, so long as copies of the complaint and summons are served directly on the individual Defendants, the court maintains personal jurisdiction over them individually.

C.   <u>Emory's ADA and Rehabilitation Act Claims.</u>

In this court's August 31, 2006, order, the court dismissed Emory's claims under the ADA and the Rehabilitation Act after concluding that the ADA does not apply to the federal government and that Defendants are immune from any claim for monetary damages under section 504 of the Rehabilitation Act. To the extent that the SAC realleges claims against HUD or the official Defendants under the ADA or section 504 of the Rehabilitation Act for money damages, the court dismisses those claims for the reasons discussed in that order. To the extent Emory seeks injunctive relief against any Defendant or money damages against the individual Defendants, those claims remain, as Defendants' motion does not address those matters.

       D.    Emory's Obstruction of Justice Claim.

Emory appears to assert a claim for obstruction of justice. In the SAC, Emory asserts:

> 7. Obstruction of justice by Honolulu's HUD Director Michael Flores who lied to Plaintiff about the whereabouts of former Honolulu HUD enforcer Michael Glogower, saying he was retired, when Plaintiff recently tracked down Mr. Glogower to the Louisville, Kentucky HUD office.
>
> 8. Obstruction of Justice by HUD's Secretary, Regional Director, Honolulu Director and Honolulu Investigator by contradicting the professional responsibilities required of their respective positions to uphold Federal housing rights and disability rights laws.

SAC ¶¶ 7-8. To the extent Emory may be asserting a claim for obstruction of justice, the court dismisses it, as obstructing justice is a crime, not a civil cause of action. See Forsythe v. Humana, Inc., 114 F.2d 1467, 1482 (9th Cir. 1997) ("The obstruction of justice claim under 18 U.S.C. § 1503 is also futile because 18 U.S.C. § 1503 is a criminal statute that does not provide for a private cause of action.").

V.    CONCLUSION.

The court grants Defendants' summary judgment on Emory's tort claims against HUD and the official Defendants. This order leaves the following claims for further adjudication: (1) claims under Bivens for alleged constitutional violations by the individual Defendants; (2) Emory's FOIA claim; and (3) such

14

other claims, if any, as Emory may be justified in arguing are asserted (unclearly) in the SAC.

IT IS SO ORDERED.

DATED: Honolulu, Hawaii, December 12, 2006.



/s/ Susan Oki Mollway
Susan Oki Mollway
United States District Judge

**Jade Emory v. United States Department of Housing and Urban Development, et al.**, Civ. No. 05-00671 SOM/LEK; ORDER GRANTING DEFENDANTS' MOTION TO DISMISS.