IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| JADE EMORY, | ) | CIVIL NO. 05-00671 SOM/LEK |
| | ) | |
| Plaintiff, | ) | ORDER DENYING PLAINTIFF'S |
| | ) | MOTIONS TO DISMISS PERJURY, |
| vs. | ) | TO REQUIRE COMPLIANCE BY THE |
| | ) | UNITED STATES MARSHALS |
| UNITED STATES DEPARTMENT OF | ) | SERVICE, AND TO RECONSIDER |
| HOUSING AND URBAN | ) | THIS COURT'S ORDER OF |
| DEVELOPMENT, et al., | ) | DECEMBER 12, 2006 |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

ORDER DENYING PLAINTIFF'S MOTIONS TO DISMISS PERJURY, TO REQUIRE
COMPLIANCE BY THE UNITED STATES MARSHALS SERVICE, AND TO
RECONSIDER THIS COURT'S ORDER OF DECEMBER 12, 2006

I.      INTRODUCTION.

On December 14, 2006, Plaintiff Jade Emory ("Emory") filed three motions to: (1) "dismiss perjury submitted by Defense Counsel"; (2) "require the United States Marshals Service to properly serve the named defendants personally"; and (3) reconsider this court's dismissal of her tort claims against Defendants United States Department of Housing and Urban Development ("HUD") and Alphonso Jackson, Charles Hauptman, Anne Quesada, Michael Flores, and Jelani Madaraka (collectively, "Defendants") in their official capacities. Regarding the allegedly fraudulent evidence, Emory says that defense counsel "coerced" Madaraka into signing a false declaration and asks this court to "privately interview Mr. Madaraka in Judge's chambers . . . to elicit the truth." With respect to service by the USMS, Emory alleges that the office "improperly performed service for

the second amended complaint" and "requests the Court to have words with the U.S. Marshal's office to require compliance." Regarding her motion for reconsideration, Emory points to evidence that she says proves that she exhausted her administrative remedies before bringing this lawsuit.  The court denies Emory's motions.

II.        MOTION TO DISMISS PERJURY.

Emory argues that defense counsel submitted a fraudulent declaration by Madaraka, described by Emory as "the HUD Investigator assigned to [her] case against [the Housing and Community Development Corporation of Hawaii ('HCDCH')]."  Motion at 1.  Emory says that Madaraka "was being entirely truthful when he repeatedly told Plaintiff that her case against HCDCH was absolutely justified," but that he "was later coerced by Defense Counsel to sign the fraudulent 'Declaration' because Plaintiff had correctly named Mr. Madaraka as one of her two advocates within the ranks of HUD employees."  Motion at 2.  Emory alleges that "Defense Counsel wanted to completely usurp all support for Plaintiff from within HUD."  Motion at 2.  Emory asks this court to "privately interview Mr. Madaraka in Judge's chambers as soon as possible . . . in order to elicit the truth and prevent further delays in this lengthy, expensive and agonizing process for this Plaintiff."  The court denies Emory's request.

The only declaration by Madaraka in the record is dated May 12, 2006.  <u>See generally</u> Declaration of Jelani Madaraka (5/12/2006) (attached to Emory's September 8, 2006, Motion to Reassign Case and to Defendants' May 25, 2006, Counter-Motion to Dismiss).  In that declaration, Madaraka says he was assigned to investigate Emory's complaint against the HCDCH and that he "recommended that HUD find no reasonable cause existed to believe that a discriminatory housing practice had occurred."  <u>Id.</u> ¶¶ 3-5.

Emory points to no evidentiary support for her allegation that defense counsel "coerced" Madaraka into "sign[ing] the fraudulent 'Declaration.'"  Motion at 2.  In support of her assertion that Madaraka "was being entirely truthful when he repeatedly told Plaintiff that her case against HCDCH was absolutely justified," Emory relies on her own "EXPERT PROFESSIONAL OPINION."  Motion at 2.  Without any admissible evidence that Madaraka lied in his declaration, the court has no basis to determine that his statements therein are fraudulent or that he was coerced into signing it.

Moreover, the court is not an investigative body.  Even assuming Madaraka's credibility were an issue now before the court, it is not this court's function to gather evidence as to credibility.

III.     MOTION TO REQUIRE COMPLIANCE BY THE UNITED STATES MARSHALS SERVICE.

Emory also says that she "has encountered resistance from the U.S. Marshals office" because she says that office "improperly performed service for the second amended complaint." Motion at 2. On this point, Emory asks this court "to have words with the U.S. Marshal's office" to ensure that the individual Defendants are properly served. Motion at 2. The court denies Emory's request.

On November 10, 2006, Emory filled out five USM-285 forms and asked the USMS to serve the five individual Defendants. Although Emory had the option of listing "special instructions" regarding how to serve the individual Defendants, she did not instruct the office to perform service in any particular way. As a result, Jackson, Hauptman, and Quesada were served by mail at the work addresses provided by Emory. The record does not show that service of the other two Defendants has been completed.

After Emory had filled out the USM-285 forms on November 10, 2006, this court issued an order granting Defendants' Motion to Dismiss on December 12, 2006. In that order, the court explained that service of the individual Defendants at their place of employment would be proper as long as they are served personally:

> Defendants' counsel conceded at the hearing on the motion to dismiss that the individual Defendants may be personally served at the HUD office. They may not be

4

>           served by leaving copies for them with an
>           agent of HUD at their place of employment,
>           but <u>personal</u> service is allowed, regardless
>           of where it occurs.  In other words, so long
>           as copies of the complaint and summons are
>           served directly on the individual Defendants,
>           the court maintains personal jurisdiction
>           over them individually.

December 12, 2006, Order Granting Defendants' Motion to Dismiss at 13 (internal citation omitted).

Emory may now resubmit copies of the USM-285 form, filled out as appropriate.  If Emory wants the USMS to serve the Defendants in any particular way, she must so specify on the form; otherwise, service will be effected by mail to the addresses she provides.  In other words, it is Emory's duty to properly instruct the Marshals office as to how service shall be executed.  Any special instructions must be detailed on each USM-285 form that Emory fills out for each Defendant.  For example, Emory may instruct the Marshals office:  (1) to serve no one other than the individual Defendants; or (2) to serve Defendants by hand, not mail.  If Emory fails to provide special instructions for the service of each Defendant and each Defendant is therefore served by mail, Emory may not later complain that service was improper.  It is also Emory's duty to provide a certified copy of her Second Amended Complaint for each Defendant being served.

   This court has gone to some lengths to outline service procedures for Emory.  Emory's request for more action by the court in this regard is denied.

IV.  MOTION TO RECONSIDER THIS COURT'S DECEMBER 12, 2006, ORDER.

  A. LEGAL STANDARD.

   In the Ninth Circuit, a successful motion for reconsideration must accomplish two goals.  First, it must demonstrate some reason that the court should reconsider its prior decision.  Second, a motion for reconsideration must set forth facts or law of a strongly convincing nature to induce the court to reverse its prior decision.  See Na Mamo O 'Aha 'Ino v. Galiher, 60 F. Supp. 2d 1058, 1059 (D. Haw. 1999); Donaldson v. Liberty Mut. Ins. Co., 947 F. Supp. 429, 430 (D. Haw. 1996). Courts have established three grounds justifying reconsideration: (1) an intervening change in controlling law; (2) the availability of new evidence; and (3) the need to correct clear error or prevent manifest injustice.  See Mustafa v. Clark County Sch. Dist., 157 F.3d 1169, 1178-79 (9th Cir. 1998).  The District of Hawaii has implemented these standards in Local Rule 60.1, which states:

> Motions for reconsideration of interlocutory orders may be brought only upon the following grounds:
>
> (a) Discovery of new material facts not previously available;
>
> (b) Intervening change in law;

>           (c) Manifest error of law or fact.
>
>      Motions asserted under Subsection (c) of
> this rule must be filed not more than ten
> (10) business days after the court's written
> order is filed.

Disagreement with a previous order is an insufficient basis for reconsideration, and reconsideration may not be based on evidence and legal arguments that could have been presented at the time of the challenged decision. Hawaii Stevedores, Inc. v. HT & T Co., 363 F. Supp. 2d 1253, 1269 (D. Haw. 2005). "Whether or not to grant reconsideration is committed to the sound discretion of the court." Navajo Nation v. Confederated Tribes & Bands of the Yakama Indian Nation, 331 F.3d 1041, 1046 (9th Cir. 2003) (citing Kona Enters., Inc. v. Estate of Bishop, 229 F.3d 877, 883 (9th Cir. 2000)).

    B.   ANALYSIS.

Emory seeks reconsideration of this court's dismissal of her tort claims against HUD and the official Defendants. Motion at 2-3. Emory argues that the court erred in concluding that she did not exhaust her administrative remedies prior to bringing her tort claims. Motion at 2-3. Emory contends that, at the hearing on Defendants' motion to dismiss, she submitted "proof that she did exhaust administrative remedies in a proper and timely manner prior to filing charges against all named defendants." Motion at 2 (emphasis in original). Emory asks this court to review that evidence again, as well as "her letter

7

to Washington, D.C.'s HUD Secretary Alphonso Jackson." Motion at 2. Because the court already considered that evidence in dismissing Emory's tort claims against HUD and the official Defendants, the court denies her motion for reconsideration.

As this court noted in its orders of August 31, 2006, and December 12, 2006, prior to bringing her tort claims against HUD and the official Defendants in federal court, Emory was required to first present those claims "to the appropriate Federal agency" and to receive a final written denial of her claims. See 28 U.S.C. § 2675(a).

At the hearing on Defendants' motion to dismiss, Emory pointed this court to a letter HUD sent to her that was dated March 31, 2006. See Ex. 13 (attached to the Second Amended Complaint ("SAC")).[1] That letter concerns Emory's complaint against the HCDCH, not against HUD or the HUD employees named as Defendants in their official capacities. Indeed, the "subject" of the letter states: "Case Name: Emory v. Housing & Community Development Corp. of Hawaii." Ex. 13 (attached to SAC). In the letter, Bryan Greene, who is HUD's Deputy Assistant Secretary for Enforcement and Programs, says: "I have determined that the HCDCH did comply with 24 CFR §§ 8.4(a), 8.4(b)(1)(iv), and 8.4(b)(4)(i)." Although the letter indicates that Emory filed an administrative complaint against the HCDCH, nothing in the letter

---

[1] Because Emory has not numbered the documents attached to the SAC, the court refers to those documents as Exhibits in the order they are attached to the SAC.

8

indicates that Emory exhausted her administrative remedies regarding her tort claims against HUD or the named officials.

Emory also asks this court to review "her letter to Washington, D.C.'s HUD Secretary Alphonso Jackson." Motion at 2. Emory has not attached any documents to her motion. Although Emory attached to the SAC two letters she sent to HUD, neither of them is directed to Jackson. See Exs. 5 and 15 (attached to SAC). Nevertheless, the court reviews each of those letters to determine if they indicate that she exhausted her administrative remedies against HUD or the official Defendants.

The first letter is dated January 23, 2005. See Ex. 5 (attached to SAC). In the letter, Emory states:

> ATT  Charles E. Hauptman
> RE   Housing Discrimination Complaint # 09-03-1069-8
> Sir:
> On December 20, 2004 you wrote that "a copy of the final investigative report HAS been sent" to me under separate cover.
> I have never received anything after the last note from you. PLEASE SEND MY REPORT immediately!
> You should be advised that I have filed charges against you with the Office of the Inspector General in Washington D.C.
> You will never do this to anyone ever again!

Ex. 5 (attached to SAC) (emphases in original). As Emory indicated in the subject line of her letter, this letter to HUD concerns "Housing Discrimination Complaint # 09-03-1069-8," which was Emory's discrimination complaint against the HCDCH. See generally Exs. 1, 3, 5, 12, 13 (attached to SAC) (noting that

9

Emory's housing discrimination complaint against the HCDCH was assigned "HUD Case No. 09-03-1069-8").  This letter does not mention any administrative complaint against HUD or the official Defendants.

The second letter from Emory to HUD is dated September 15, 2006.  Ex. 15 (attached to SAC).  Nowhere in that letter does Emory mention that she filed an administrative complaint against HUD or the official Defendants.  Instead, the letter acknowledges "the discrimination charges [she] filed with HUD against HCDCH."  Ex. 15 (attached to SAC) at 1.  Because none of the letters Emory points this court to establishes that she exhausted her administrative remedies regarding her tort claims against HUD and the official Defendants, the court denies Emory's motion for reconsideration.

V.        CONCLUSION.

In light of the foregoing, the court denies Emory's motions.

IT IS SO ORDERED.

DATED:  Honolulu, Hawaii, December 19, 2006.

/s/ Susan Oki Mollway
Susan Oki Mollway
United States District Judge

**Jade Emory v. United States Department of Housing and Urban Development, et al.**, Civ. No. 05-00671 SOM/LEK; ORDER DENYING PLAINTIFF'S MOTIONS TO DISMISS PERJURY, TO REQUIRE COMPLIANCE BY THE UNITED STATES MARSHALS SERVICE, AND TO RECONSIDER THIS COURT'S ORDER OF DECEMBER 12, 2006.