IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| JADE EMORY, | ) | CIVIL NO. 05-00671 SOM/LEK |
| | ) | |
| Plaintiff, | ) | ORDER GRANTING PLAINTIFF'S |
| | ) | MOTION TO DISMISS DEFENDANT |
| vs. | ) | JELANI MADARAKA; GRANTING |
| | ) | DEFENDANTS' MOTION FOR |
| UNITED STATES DEPARTMENT OF | ) | SUMMARY JUDGMENT ON |
| HOUSING AND URBAN | ) | PLAINTIFF'S BIVENS CLAIMS; |
| DEVELOPMENT, et al., | ) | GRANTING DEFENDANTS' MOTION |
| | ) | TO DISMISS PLAINTIFF'S FOIA |
| Defendants. | ) | CLAIMS AGAINST ALL DEFENDANTS |
| | ) | OTHER THAN HUD; DEFERRING |
| | ) | DEFENDANTS' MOTION FOR |
| | ) | SUMMARY JUDGMENT ON FOIA |
| | ) | CLAIMS AGAINST HUD; AND |
| | ) | DENYING PLAINTIFF'S MOTIONS |
| _____ | ) | FOR SUMMARY JUDGMENT |

ORDER GRANTING PLAINTIFF'S MOTION TO DISMISS DEFENDANT JELANI
MADARAKA; GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ON
PLAINTIFF'S BIVENS CLAIMS; GRANTING DEFENDANTS' MOTION TO DISMISS
PLAINTIFF'S FOIA CLAIMS AGAINST ALL DEFENDANTS OTHER THAN HUD;
DEFERRING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ON FOIA CLAIMS
AGAINST HUD; AND DENYING PLAINTIFF'S MOTIONS FOR SUMMARY JUDGMENT

I.        INTRODUCTION.

On September 29, 2006, Plaintiff Jade Emory filed her

second amended complaint ("Complaint") against Defendants United

States Department of Housing and Urban Development ("HUD"),

Alphonso Jackson, Charles Hauptman, Anne Quesada, Michael Flores,

and Jelani Madaraka (collectively, "Defendants").[1]  The Complaint

alleges that Defendants:  (1) committed various torts, including

---

[1] Emory alleges that:  Jackson is the Secretary of HUD;
Hauptman is the Director of the San Francisco Regional HUD
office; Quesada is employed at the San Francisco HUD office, and
Flores and Madaraka are employed at the Honolulu HUD office.
Each Defendant is sued in his or her official and individual
capacities.

fraud, misrepresentation, gross negligence, gross mismanagement, "intentional infliction of physical, emotional and financial hardship," misuse of the United States Postal Service, and "[p]rofessional ineptitude, inefficiency and misconduct"; (2) refused to "police" the Housing and Community Development Corporation of Hawaii ("the HCDCH"); (3) refused to "require state compliance" with the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 et seq., and section 504 of the Rehabilitation Act, 29 U.S.C. § 794; (4) obstructed justice; (5) conspired with the HCDCH to "deprive [Emory] of her disability and housing civil rights"; and (6) failed to comply with the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552. Emory also asserts that the individual Defendants violated the First, Fifth, Ninth, and Fourteenth Amendments of the United States Constitution under <u>Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics</u>, 403 U.S. 388 (1971).  Emory prays for injunctive relief and monetary damages.

On December 12, 2006, this court granted Defendants' motion to dismiss the tort claims against the official Defendants.  The court also dismissed claims against the official Defendants under the ADA and section 504 of the Rehabilitation Act for money damages, as well as claims against all Defendants for obstruction of justice.

Before the court are five motions:  (1) Defendants'
March 16, 2007, motion for dismissal and/or summary judgment on
Emory's <u>Bivens</u> claims, arguing that the individual Defendants are
entitled to absolute and/or qualified immunity; (2) Defendants'
April 11, 2007, motion for dismissal and/or summary judgment on
Emory's FOIA claims, arguing that the claims are moot;
(3) Emory's March 27, 2007, motion to dismiss Defendant Jelani
Madaraka; (4) Emory's March 27, 2007, motion for summary judgment
on all claims; and (5) Emory's April 18, 2007, motion for summary
judgment on all claims.[2]

For the following reasons, the court dismisses Madaraka
as a Defendant, grants summary judgment in favor of the
individual Defendants on Emory's <u>Bivens</u> claims, dismisses the
FOIA claims against all Defendants other than HUD, and defers
ruling on the summary judgment motion concerning Emory's FOIA
claims against HUD.  The court also denies both of Emory's
motions for summary judgment.

II.        <u>BACKGROUND.</u>

The court incorporates the background section from its
order of December 12, 2006, but also provides additional facts
pertinent to the motions presently before the court.

---

[2] Pursuant to Local Rule 7.2, this court exercises its
discretion to decide most of the present motions without a
hearing.  LR 7.2 ("The court, in its discretion, may decide any
motion without a hearing.")

A.   <u>Emory's Complaint Against The HCDCH.</u>

Emory says she became qualified for rental assistance under the "Section 8" rental subsidy program some time before 1995.  Complaint at 2 (Background).  Emory alleges that, in September 2002, the HCDCH "silently discontinued her eligibility" for the Section 8 program.  Complaint at 4 (Background).

On September 1, 2003, Emory filed a complaint against the HCDCH with HUD, alleging that the HCDCH failed to provide her with reasonable accommodations and discriminated against her based on her disability.  Ex. A (attached to Defendants' <u>Bivens</u> Motion).  Madaraka, who is an Equal Opportunity Specialist at the HUD Honolulu Field Office, investigated Emory's complaint and sent the case to the San Francisco Field Office "for review and for an issuance of HUD's final determination."  Declaration of Jelani M. Madaraka (2/21/2007) ¶¶ 1, 3.

Quesada, who is the Region XI Program Center Director for the Office of Fair Housing and Equal Opportunity, says she "received the completed investigation case file from Jelani Madaraka."  Declaration of Anne Quesada (2/9/2007) ¶ 3.  Quesada says she "reviewed the investigation and evidence and concurred with Mr. Madaraka's determination of 'no cause' and forwarded the case file to the Office of Counsel for their review and concurrence."  <u>Id.</u>  Hauptman, who is the Region XI Office of Fair Housing and Equal Opportunity Director, says he ultimately

4

"determined that there was insufficient evidence to support
[Emory's] allegations and issued a finding of No Reasonable
Cause" on September 30, 2004.  Declaration of Charles E. Hauptman
(2/8/2007) ¶¶ 1, 3; see also Ex. 3 (attached to Complaint).

      B.   Emory's FOIA Request.

      On January 19, 2006, pursuant to FOIA, Emory requested
from HUD "any, if not all of the information in my case against"
the HCDCH, as well as "a variety of documents concerning
corruption of the HCDCH and its employees."  Ex. B (attached to
Defendants' FOIA Motion); Declaration of Mary Lou Nelson
(4/9/2007) ("Nelson Decl'n") ¶¶ 3-4.  HUD responded to the
request on March 9, 2006, by providing Emory a copy of "all
releasable San Francisco documents concerning her own fair
housing complaint" and by referring "the Honolulu document
request to [the] Honolulu Office."  Nelson Decl'n ¶ 6.
Subsequently, on March 15, 2007, HUD "provided all of the San
Francisco documents it previously withheld," except for one
document that was "not released from her fair housing complaint
file [because it] falls within the attorney/client privilege."
Id. ¶ 8.

III.    EMORY'S MOTION TO DISMISS DEFENDANT MADARAKA IS
       GRANTED.

      Emory named Jelani Madaraka as a Defendant in the
Complaint.  On March 27, 2007, Emory filed a motion to "dismiss
all charges against HUD's Lead Civil Rights Analyst Jelani
Madaraka, who ardently and sincerely tried to be [Emory's]

5

advocate, but was rendered powerless in those efforts by the corrupt HUD forces over his head." Motion to Dismiss Madaraka at 2. The court grants Emory's motion. All claims against Madaraka are dismissed. This leaves the court with four summary judgment motions.

IV.     LEGAL STANDARD.

        Summary judgment shall be granted when

        the pleadings, depositions, answers to
        interrogatories, and admissions on file,
        together with the affidavits, if any, show
        that there is no genuine issue as to any
        material fact and that the moving party is
        entitled to a judgment as a matter of law.

Fed. R. Civ. P. 56(c); see also Addisu v. Fred Meyer, Inc., 198 F.3d 1130, 1134 (9th Cir. 2000). One of the principal purposes of summary judgment is to identify and dispose of factually unsupported claims and defenses. Celotex Corp. v. Catrett, 477 U.S. 317, 323-24 (1986).

        Summary judgment must be granted against a party that fails to demonstrate facts to establish what will be an essential element at trial. See id. at 323. A moving party without the ultimate burden of persuasion at trial--usually, but not always, the defendant--has both the initial burden of production and the ultimate burden of persuasion on a motion for summary judgment. Nissan Fire & Marine Ins. Co. v. Fritz Cos., 210 F.3d 1099, 1102 (9th Cir. 2000). The burden initially falls upon the moving party to identify for the court "those portions of the materials on file that it believes demonstrate the absence of any genuine

issue of material fact." T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987) (citing Celotex Corp., 477 U.S. at 323).

"When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). The nonmoving party may not rely on the mere allegations in the pleadings and instead must "set forth specific facts showing that there is a genuine issue for trial." Porter v. Cal. Dep't of Corr., 419 F.3d 885, 891 (9th Cir. 2005) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986)). "A genuine dispute arises if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." California v. Campbell, 319 F.3d 1161, 1166 (9th Cir. 2003).

The summary judgment burdens are properly applied to a motion asserting qualified immunity. See Butler v. San Diego Dist. Attorney's Office, 370 F.3d 956, 958 (9th Cir. 2004) ("When a defendant makes a properly supported motion for summary judgment based on official immunity, the plaintiff has an obligation to produce evidence of his or her own. In such a case, the district court is not required (or even allowed) simply to assume the truth of challenged factual allegations in the complaint. In other words, a motion for summary judgment based on official immunity is governed by Federal Rule of Civil

Procedure 56, just like all motions for summary judgment in civil suits in federal district court.").

V.      ANALYSIS OF SUMMARY JUDGMENT MOTIONS.

       A      Defendants' Motion For Summary Judgment On Emory's Bivens Claims.

       The individual Defendants seek summary judgment on Emory's Bivens claims, which are based on alleged violations of the First, Fifth, Ninth, and Fourteenth Amendments.  The individual Defendants argue that they are qualifiedly immune from the Bivens claims "because [Emory] does not . . . identify what any defendant did to violate the constitution, much less to violate any clearly established constitutional right." Defendant's Bivens Motion at 2.  The court agrees that the individual Defendants are entitled to qualified immunity with respect to these claims.

       Qualified immunity shields Bivens defendants "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."  See Devereaux v. Abbey, 263 F.3d 1070, 1074 (9th Cir. 2001) (en banc) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)); see also San Jose Charter of the Hells Angels Motorcycle Club v. City of San Jose, 402 F.3d 962, 971 (9th Cir. 2005); Galvin v. Hay, 374 F.3d 739, 757 (9th Cir. 2004) (applying qualified immunity to Bivens claims).  The qualified immunity doctrine protects government

8

officials from their exercise of poor judgment and fails to protect only those who are "plainly incompetent or those who knowingly violate the law." Malley v. Briggs, 475 U.S. 335, 341 (1986).  The purpose of qualified immunity is to protect officials from undue interference with their duties and from potentially disabling threats of liability.  Sinaloa Lake Owners Ass'n v. City of Simi Valley, 70 F.3d 1095, 1098 (9th Cir. 1994). The Supreme Court has therefore stated that qualified immunity is an entitlement not to stand trial or face the other burdens of litigation.  Saucier v. Katz, 533 U.S. 194, 200 (2001).  The Supreme Court has cautioned that a ruling on a qualified immunity defense "should be made early in the proceedings so that the costs and expenses of trial are avoided where the defense is dispositive."  Id.

Saucier defined the qualified immunity analysis as a two-step process.  First, a court examines whether the facts alleged, taken in the light most favorable to the party asserting the injury, show that the defendant's conduct violated a constitutional right.  If no constitutional right would have been violated by the alleged actions, a defendant has qualified immunity.  On the other hand, if a violation could be made out when the facts are interpreted in the light most favorable to the injured party, the next step is to ask whether the right was clearly established.  If the law did not put the defendant on

notice that his or her conduct would clearly be unlawful, the official has qualified immunity from the claim.  Saucier, 533 U.S. at 201; see also San Jose Charter of the Hells Angels Motorcycle Club, 402 F.3d at 971; Beier v. City of Lewiston, 354 F.3d 1058, 1065 (9th Cir. 2004).

In light of Saucier, this court's first inquiry is whether the individual Defendants' conduct violated Emory's First, Fifth, Ninth, and Fourteenth Amendment rights.  The individual Defendants argue that they are entitled to qualified immunity "because [Emory] does not . . . identify what any defendant did to violate the constitution."  Defendants' Bivens Motion at 2.  Although the Complaint does not specify each individual Defendant's conduct that allegedly violated any constitutional right, Emory's opposition memorandum provides more detail than her Complaint.  See Emory 3/27/2007 Opposition at 2-3.  The court relies on the opposition memorandum in examining whether the individual Defendants are entitled to qualified immunity.  Even looking at Emory's opposition memorandum, the court does not perceive constitutional violations.

     1.   Emory's First Amendment Claims.

       a.   Against Jackson.

Emory does not allege any specific conduct by Jackson that violated her First Amendment rights and therefore cannot

establish that he did violate such rights.   See Saucier, 533 U.S. at 201.   Jackson is entitled to qualified immunity on Emory's Bivens claim that he violated her First Amendment rights.   See id.

>           b.   Against Flores.

Emory alleges that Flores violated her First Amendment rights as follows:

> The Honolulu Director of HUD, Defendant Michael Flores deliberately misinformed [Emory] as to the whereabouts of HUD's former enforcer, Mr. Glogower, whom [Emory] tracked to the Louisville Kentucky HUD office.   This is obstruction of justice, which violates [Emory's] Constitutional rights under the First Amendment, which guarantees her the right to redress of valid grievances.   A man is not appointed to be Director of a Regional HUD office if he is so mentally obtuse as to "not remember" if employees have retired, or where employees have resituated once leaving Honolulu's regional office.

Emory 3/27/2007 Opposition at 2 (emphasis in original).

The First Amendment guarantees the right "to petition the Government for a redress of grievances."   However, "there is no constitutional value in false statements of fact."   Clipper Exxpress v. Rocky Mountain Motor Tariff Bureau, Inc., 690 F.2d 1240, 1261 (9th Cir. 1982) (quoting Gertz v. Robert Welch, Inc., 418 U.S. 323, 340 (1974)).   Therefore, even assuming that Flores did in fact provide Emory with false information concerning "the whereabouts of HUD's former enforcer, Mr. Glogower," this false statement does not violate Emory's constitutional rights.   See

11

id. Emory has not established that Flores violated her First Amendment rights, and Flores is entitled to qualified immunity. See Saucier, 533 U.S. at 201.

c.   Against Hauptman And Quesada.

Emory alleges that Hauptman and Quesada violated her First Amendment rights when they "ignored the validity of [Emory's] irrefutable evidence against HCDCH." Emory 3/27/2007 Opposition at 2.

The First Amendment right to petition the Government for redress of grievances "does not mean that every petition for redress of grievances must be successful." Petersen v. Cazemier, 164 F. Supp. 1217, 1225 (D. Or. 2001). In other words, a plaintiff "is not guaranteed redress, simply the right to seek it." Id. Additionally, this First Amendment right confers "no right to a response or any particular action." Johnson v. City of E. Palo Alto Police Dep't, No. C05-2921 CRBPR, 2005 WL 5188344, at *1 (N.D. Cal. July 25, 2005).

Emory provides no evidence that Hauptman or Quesada "ignored the validity of [her] irrefutable evidence against HCDCH." The only evidence in the record pertaining to this issue are the declarations of Hauptman and Quesada. Hauptman says he "determined that there was insufficient evidence to support [Emory's] allegations" against the HCDCH. Hauptman Decl'n ¶ 3. Quesada says she "reviewed the investigation and evidence and

concurred with Mr. Madaraka's determination of 'no cause.'"
Quesada Decl'n ¶ 3.  Thus, in viewing the present record in the
light most favorable to Emory, the court finds nothing suggesting
that Hauptman or Quesada ignored any evidence Emory submitted.
Furthermore, to the extent Emory's claim is based on the
unfavorable "no cause" decision against her or on Hauptman's or
Quesada's failure to take particular action with her grievance,
her claim fails in light of <u>Petersen</u> and <u>Johnson</u>.  Accordingly,
Emory has not established that Hauptman or Quesada violated her
First Amendment rights, and they are entitled to qualified
immunity.  <u>See</u> <u>Saucier</u>, 533 U.S. at 201.

    2.   <u>Emory's Fifth Amendment Claims.</u>

         a.   <u>Against Jackson And Flores.</u>

    Emory does not allege any specific conduct by Jackson
or Flores that violated her Fifth Amendment rights and therefore
cannot establish that Jackson and Flores did violate such rights.
<u>See</u> <u>Saucier</u>, 533 U.S. at 201.  Jackson and Flores are entitled to
qualified immunity on Emory's <u>Bivens</u> claim that they violated her
Fifth Amendment rights.  <u>See</u> <u>id.</u>

         b.   <u>Against Hauptman And Quesada.</u>

    Emory alleges that Hauptman and Quesada violated her
Fifth Amendment rights as follows:

         Amendment 5 guarantees [Emory] the right to
         life, liberty and property.  [Emory's] life
         is now medically threatened because she was
         forced by HCDCH to live next to a narcotics

13

> lab once HUD irresponsibly discontinued the
> enforcer position which would have policed
> the state housing agency.  This would have
> prevented HCDCH from violating the terms of
> the agreement established by the last HUD
> enforcer, Mr. Michael Glogower.  Furthermore,
> the 5th Amendment states that [Emory] is due
> the right to live on, if not lease or own
> property which addresses her medical
> exigencies, according to the Fair Housing
> Act.

Emory 3/27/2007 Opposition at 2.

Even assuming that the decision to discontinue the "enforcer position" amounted to a constitutional violation, nowhere does Emory allege or provide evidence that Quesada or Hauptman made that decision.  Emory alleges that Quesada and Hauptman work at the San Francisco HUD office, but that the discontinued "enforcer position" was at the Honolulu HUD office. It may be that an individual at the Honolulu office made the decision to discontinue the position.  Without even alleging that Quesada or Hauptman, as individuals, made the decision that allegedly violated Emory's Fifth Amendment rights, Emory is unable to establish that they did violate her rights.  Quesada and Hauptman are therefore entitled to qualified immunity with respect to Emory's <u>Bivens</u> claim that they violated her Fifth Amendment rights.  <u>See</u> <u>Saucier</u>, 533 U.S. at 201.

>    3.    Emory's Ninth And Fourteenth Amendment
>          <u>Claims.</u>

Emory does not allege any specific conduct by any individual Defendant that violated her Ninth or Fourteenth

14

Amendment rights.   Regarding her Ninth Amendment rights, Emory only says, "All Defendants have violated [her] constitutional rights under Amendment 9, which states that no new law can disparage a citizens rights under original Constitutional laws." Emory 3/27/2007 Opposition at 3.  With respect to her Fourteenth Amendment rights, she says:

> In Section 1 of the Constitutional Amendment 14 it states that no state shall enforce a law that deprives a citizen of life, liberty, or property, nor deny anyone equal protection of its laws.  All named Defendants have been consistently trying to do exactly that:  to deny [Emory] equal protection of the laws of the Constitution, not to mention the handicapped housing laws and the disability rights laws which all add to [her] right to live where her medical needs can be properly accommodated.

Id. (emphasis in original).  Without alleging specific conduct by any individual Defendant that violated her Ninth and Fourteenth Amendment rights, Emory cannot establish that Defendants did violate such rights.  See Saucier, 533 U.S. at 201.  All individual Defendants are therefore entitled to qualified immunity with respect to Emory's Bivens claim that they violated her Ninth and Fourteenth Amendment rights.   See id.

Because the individual Defendants are entitled to qualified immunity from Emory's Bivens claims, the court grants summary judgment in their favor on those claims.[3]

---

[3] Because the court concludes that Defendants are qualifiedly immune from the Bivens claims, the court does not

15

      B.   Defendants' Motion For Summary Judgment On
         Emory's FOIA Claims.

Defendants move to "dismiss the FOIA claims against all defendants except HUD," arguing that "the agency which maintains the records sought by [Emory] is the only proper defendant under FOIA." Defendants' FOIA Motion at 5. Defendants also seek summary judgment on the FOIA claims against HUD, asserting that they are moot because HUD "ultimately either released every document sought, or offered to release the documents after [Emory] paid the appropriate search and copying fees." Id.

      1.   The Court Dismisses FOIA Claims Against All
         Defendants Except HUD.

In actions arising under FOIA, the only proper defendants are federal departments and agencies. See 5 U.S.C. § 552; Lawrence v. Comm'r of Internal Revenue, No. EDCV 99-251 (VAPX), 2000 WL 637351, at *1 (C.D. Cal. March 2, 2000) (citing Thompson v. Walbran, 990 F.2d 403, 405 (8th Cir. 1993); Petrus v. Bowen, 833 F.2d 581, 582 (5th Cir. 1987)). "Individual officers of federal agencies are not proper parties to a FOIA action." Lawrence, 2000 WL 637351, at *1.

HUD is a federal agency, Harris v. Itzhaki, 183 F.3d 1043, 1052 (9th Cir. 1999), and is therefore a proper Defendant for Emory's FOIA claims. See 5 U.S.C. § 552. The remaining

---

address Defendants' argument that they are also absolutely immune
from those claims.

Defendants are officers of HUD and are not proper Defendants.
See Lawrence, 2000 WL 637351, at *1.  The court therefore
dismisses Emory's FOIA claims against all Defendants except HUD.

        2.    The Court Defers Ruling On The FOIA Claims
              Against HUD.

"FOIA entitles private citizens to access to government
records." Miner v. C.I.A., 88 F.3d 796, 800 (9th Cir. 1996).
"FOIA contains nine exemptions, however, which a government
agency may invoke to protect certain documents from public
disclosure." Id. (citing 5 U.S.C. § 552(b)).  The federal agency
resisting disclosure of requested information has the burden of
proving the applicability of an exemption.  Id.  "The agency may
meet its burden by submitting a detailed affidavit showing that
the information 'logically' falls within the claimed exemptions."
Id. (citing Hunt v. C.I.A., 981 F.2d 1116, 1119 (9th Cir. 1992)
("affidavits must describe the justifications for nondisclosure
with reasonably specific detail, demonstrate that the information
withheld logically falls within the claimed exemptions, and show
that the justifications are not controverted by contrary evidence
in the record")).

Exemption 5 exempts from disclosure "inter-agency or
intra-agency memorandums or letters which would not be available
by law to a party other than an agency in litigation with the
agency." 5 U.S.C. § 552(b)(5).  This exemption "incorporates the

17

attorney-client privilege." Maricopa Audobon Soc'y v. U.S.
Forest Serv., 108 F.3d 1082, 1084 n.1 (9th Cir. 1997).

        Defendants argue that Emory's FOIA claims are moot
because HUD "either released every document sought, or offered to
release the documents after [Emory] paid the appropriate search
and copying fees." Defendants' FOIA Motion at 5. Defendants
note that the only document not released "was clearly protected
by the attorney-client privilege." Id.

        Nelson explains in her declaration that Emory requested
FOIA documents from HUD on January 19, 2006, and that Emory
"refined" her request on February 4, 2006. Nelson Decl'n
¶¶ 3, 5. Nelson also says that, although HUD initially withheld
certain documents, on March 15, 2007, HUD "provided all of the
San Francisco documents it previously withheld" except for one
document that "falls within the attorney/client privilege." Id.
¶¶ 6-7.

        The court directs HUD to provide, no later than 9 a.m.
on Friday, May 11, 2007, the withheld document to this court for
its in camera review. The court defers its ruling relating to
the FOIA claims against HUD pending the court's in camera review
of the document. That issue remains set for hearing on Monday,
May 14, 2007, at 1:30 p.m., but the court reserves the right to
resolve the issue without a hearing after its in camera review.
The parties should check with the court on the afternoon of

18

May 11, 2007, as to whether a hearing on the FOIA claims against HUD will proceed on May 14, 2007.

C.   Emory's Motions For Summary Judgment.

On March 27 and April 18, 2007, Emory filed two motions seeking summary judgment on all of her claims.  In her March 27 motion, Emory states only that she "moves . . . for Summary Judgment so that this case can be efficiently and completely concluded in the most expedient time."  Emory 3/27/2007 Motion at 4.  In her April 18 motion, Emory states that she

> requests of this Court immediate Summary
> Judgment to expediently and equitably
> conclude this case in the maximum amount
> allowed by law, so that [she] can clear her
> huge debts, end her (so far) 5 years of
> unjustly imposed homelessness and become
> situated in a medically appropriate home as
> soon as possible so as to address her long-
> neglected medical exigencies.

Emory 4/18/2007 Motion at 2.  In support of her motions, Emory also filed an "addendum" on April 27, 2007, which summarizes a "142 page HUD 2006 Report to Congress on Housing Discrimination Complaints violating the Fair Housing Act," which she says substantiates her motions for summary judgment.  See Emory Addendum at 1-3.

Although Emory points the court to portions of the 2006 HUD Report, this alone is insufficient to meet her burden as the movant on her summary judgment motions.  See T.W. Elec. Serv.,

19

Inc., 809 F.2d at 630.  The court therefore denies Emory's
motions for summary judgment.

        D.    Emory's Additional Requests.

        1.    Evidence Of Other Complainants.

      Emory asks the court to "require Defendants to show
verifiable names and numbers of all cases prosecuted and
dismissed for the last 12 years" to help her prove that
"Defendants have been . . . globally and obdurately refusing to
prosecute state perpetrators of blatant housing discrimination."
Emory 3/27/2007 Motion at 1.  Emory also appears to ask the court
for assistance in obtaining "verification of the PERCENTAGE of
housing discrimination complaints settled and/or prosecuted by
the Defendants in the past several years."  Emory 4/18/2007
Motion at 2.  The court denies these requests.  Emory must seek
discovery on her own and present any discovery disputes to the
Magistrate Judge pursuant to the Federal Rules of Civil Procedure
and the court's Local Rules.  The court emphasizes the "meet and
confer" requirement of Local Rule 37.1.

        2.    Service On Defendant Jackson Personally.

      In Emory's March 27, 2007, motion, she alleges that the
United States Marshals Service "is deliberately refusing to serve
Mr. Jackson, so that Mr. Jackson will 'get off.'"  Emory
3/27/2007 Motion at 3.  Emory therefore "implores this Court to
require the U.S. Marshal to serve Mr. Jackson immediately and

properly, once and for all." Id.  The court denies this request and again encourages Emory to work directly with the Marshals Service.  See Court Letter to Parties (Jan. 22, 2007) (document 92) ("This court will not itself be involved with the mechanics of service, and Ms. Emory is encouraged to work directly with the Marshals Service instead of seeking court intervention.").

VI.       CONCLUSION.

        The court:  (1) grants Emory's motion to dismiss Madaraka as a Defendant; (2) grants summary judgment in favor of the individual Defendants on Emory's Bivens claims; (3) dismisses Emory's FOIA claims against all Defendants except HUD; (4) defers the motion for summary judgment on Emory's FOIA claims against HUD; and (5) denies Emory's motions for summary judgment.  This order leaves the following claims for further adjudication: (1) the FOIA claims against HUD; (2) tort claims against the individual Defendants; and (3) such other claims, if any, as Emory may establish are sufficiently asserted in the Complaint. The parties are reminded to contact the court on May 11, 2007, to

check on whether a hearing on the FOIA claims against HUD will proceed on May 14, 2007.

          IT IS SO ORDERED.

          DATED:  Honolulu, Hawaii, May 10, 2007.



          Susan Oki Mollway
          United States District Judge

**Jade Emory v. United States Department of Housing and Urban Development, et al.**, Civ. No. 05-00671 SOM/LEK; ORDER GRANTING PLAINTIFF'S MOTION TO DISMISS DEFENDANT JELANI MADARAKA; GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ON PLAINTIFF'S BIVENS CLAIMS; GRANTING DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S FOIA CLAIMS AGAINST ALL DEFENDANTS OTHER THAN HUD; DEFERRING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ON FOIA CLAIMS AGAINST HUD; AND DENYING PLAINTIFF'S MOTIONS FOR SUMMARY JUDGMENT.